HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD J. BAKER,

        Plaintiff,

   v.

MICROSOFT CORPORATION, et al.,

        Defendants.

Case No. C16-396RAJ

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on Defendants Microsoft Corporation, Electronic Arts Inc., Harmonix Music Systems, Inc., Majesco Entertainment Co., Ubisoft Inc., and Nintendo of America Inc.'s (collectively "Defendants") Motion for Summary Judgment. Dkt. # 130.  Plaintiff Richard Baker ("Mr. Baker") alleges that Defendants' products infringe United States Patent No. 5,486,001 (the "'001 Patent"), a patent issued to him in 1996. Dkt. #44 at 3-4.  Defendants contend they are entitled to summary judgment because the accused products do not come within the scope of Mr. Baker's patent.  Dkt. #130 at 16-21.  Mr. Baker disputes Defendants' interpretation of the '001 Patent and argues that Defendants' products, when combined, literally infringe upon the '001 Patent.    Dkt. #133 at 22. Alternatively, Mr. Baker argues that the doctrine of equivalents applies and warrants a finding

ORDER
PAGE - 1

of infringement.  Dkts. #129 at 15 and #133 at 24-26.  The Court, having reviewed the record before it, GRANTS Defendants' motion.

## II.  BACKGROUND

In 1992 Richard Baker filed a patent application, Application No. 146,016, with the United States Patent and Trademark Office ("USPTO").  Dkts. #131, Ex. 3 at 2, and #133 at 8-9.  The application described a personalized instructional aid that captured visual images representative of a person's movement, stored those visual images, compared those visual images to exemplary movements stored in a database, and then generated adjusted visual images to help an user emulate the exemplary movement.  Dkt. #131, Ex. 4 at 23-27. Application No. 146,016 was rejected.  *Id*., Ex. 5.

Besides failing for indefiniteness under 35 U.S.C. § 112, the USPTO rejected Mr. Baker's proposed claims because they were anticipated by United States Patent No. 5,184,295 (the "Mann Patent"), and because several claims were obvious when the Mann Patent was combined with other prior art.  *Id*. at 5-8.  In its 35 U.S.C § 102(a) and (e) rejections, the Patent Examiner concluded that the Mann Patent "includes the steps of capturing and storing visual image signals representative of a particular movement, comparing said captured image signals with stored image signals of a preferred movement, and generating further video image signals based on the original signals."  *Id*. at 4.

Following the USPTO's initial rejection, Mr. Baker amended his patent application. Dkt. #131, Ex. 1.  Mr. Baker amended his proposed patent claims by adding limitations indicating that the image capturing device of his personalized instructional aid was to be located "at a first location," while the place for storage, comparison, and generation of further video image signals was too occur "at a second location remote from said first location in a

data base of a computer . . . ." *Id*. at 9-14.  To support his amendments, Mr. Baker argued that the "separation or remoteness" between the location of the '001 Patent's image capturing device and the location of the computer system (where the comparison and analysis of the captured image signals takes place) precluded anticipation by the Mann Patent and other prior art.  *Id*. at 18-19.  Mr. Baker explained, "[n]owhere in Mann is there a teaching that the computer system is located remotely from the teaching station as is emphasized in Applicant's disclosure, wherein the primary images are formed in one location for instruction such as a studio or an aircraft."  *Id*. at 18.  The '001 Patent's transmittance of captured images "to a separate location for analysis and feedback" was considered "critical in Applicant's invention, because the programming can be efficiently performed at the remote computer station."  *Id*.

Following Mr. Baker's amendments, the USPTO allowed Mr. Baker's claims; the '001 Patent issued on January 23, 1996.  Dkt. #131, Ex. 3.  The '001 Patent includes method and apparatus claims, and it expired on January 23, 2013.  Dkts. #44 at 4 and #131, Ex. 3 at 10-11.

After the '001 Patent issued, Mr. Baker filed a Continuation-in-Part Patent application ("CIP Patent").  Dkt. #131, Ex. 6.  The CIP Patent sought to expand the '001 Patent by allowing a computer, which the '001 Patent places at a second location remote from an image capturing device, to be located at the same location, or adjacent to, the image capturing device called for in the '001 Patent.  Dkts. #131, Ex. 6 at 5, 21 and Dkt. #131, Ex. 3 at 10-11.  All sixteen CIP Patent claims were not patentable due to prior art references and the CIP patent was rejected.  Dkt. #131, Ex. 7 at 7.

Mr. Baker now accuses Defendants of infringing claims 1-5, 10-15, and 18-20 of the '001 Patent.  Dkts. #44 at 3-16 and #129 at 2.  Claims 1, 10, and 18 are independent claims. Dkt. #131, Ex. 3 at 10-11.  Claims 1 and 10 require "capturing" and "storing" visual image

signals at a "first location." *Id*. at 10.  The captured visual images are then transmitted to a "second location remote from the first location" where those images are stored. *Id*.  Claim 18 requires a means for "visually scanning, sensing and capturing visual and informational data signals representative of a particular target," a means for "storing said representative visual and informational data signals," and a means for "transmitting said representative visual and information data signals to a remote location." *Id*. at 11.  Claim 1 is a method claim, while Claims 10 and 18 are apparatus claims. *Id*. at 10-11.

Mr. Baker accuses these two product groups of infringement: (1) Microsoft's Kinect sensor and games that can be played on the Xbox 360 with the Kinect sensor; and (2) the Your Shape game and associated camera, as played on Nintendo's Wii console or a personal computer ("PC"). *See* Dkt. #132 ¶ 3.  The cameras associated with these two groups are connected to their respective game consoles with a physical cable. *Id*. ¶¶ 7, 13, 17, 19.

Mr. Baker contends that combined use of the accused products infringes the '001 Patent claims. Dkt. #44 at 4.  According to Mr. Baker, images are formed by the accused cameras, thereby satisfying the "capturing and storing initial visual image signals . . . at a first location" requirement of the '001 Patent claims. Dkt. #129 at 14-15.  The "first location" required by the asserted claims is located where the "real world person is who wants personalized audio-visual advice or an object[.]" *Id*. at 15.  Mr. Baker then accuses the Xbox360 console, the Nintendo Wii console, and PCs of "storing preferred image signals representative of a selected preferred movement at a second location remote from said first location in a data base of a computer." *Id*. at 15.  In his infringement contentions, Mr. Baker alleges that the accused cameras are at the "first location," while the Xbox 360 console, the Nintendo Wii console, and the PCs are the "second location remote from said first location." *Id*. at 14-15.

ORDER
PAGE - 4

Defendants' motion for summary judgment is now before the Court.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When ruling on summary judgment, courts do not weigh evidence to determine the truth of the matter, but "only determine whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Fed. Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

Courts must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747. However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

Defendants seek summary judgment on three grounds. First, Defendants contend that Mr. Baker cannot prove their products literally infringe the '001 Patent. Dkt. #130 at 16-18. Defendants also contend that Mr. Baker's patent prosecution amendments and arguments preclude Mr. Baker's attempt to establish infringement under the doctrine of equivalents. *Id.* at

ORDER
PAGE - 5

18-20.  Finally, Defendants argue that Mr. Baker cannot rely on an "after-arising" theory to rely on the doctrine of equivalents.  *Id*. at 20-21.

In response, Mr. Baker contends the accused products infringe the '001 Patent because a computer located in the same room as an image capturing device satisfies '001 Patent limitations which require that a computer be located at a "second location" that is "remote" from the "first location" in which an image capturing device is located.  *See* Dkt. #129 at 2-3.

The Court agrees with Defendants and addresses each of the parties' arguments in turn.

**A.  Literal Infringement**

Defendants contend their accused products do not literally infringe the '001 Patent because those products do not satisfy '001 Patent claim limitations which require that images captured in one location be transmitted to a "second location remote from the first location." Dkt. #130 at 16-17.  According to Defendants, a "first location" and "second location remote from said first location" cannot be in the same room.  *Id*. at 16-18.  Because Defendants' accused products are within the same room, Defendants argue that their products do not literally infringe Claims 1, 10, and 18 of the '001 Patent.  *Id*.  Mr. Baker disagrees and argues that a computer located in the same room as the image-capturing device required by the '001 Patent can be considered "remote."  Dkt. #133 at 19-23.  In support of his argument, Mr. Baker relies on the prior construction of the term "remote location" in an unrelated patent.  *Id*.

The Court agrees that Defendants' accused products do not literally infringe Claims 1, 10, and 18 of the '001 Patent.  Determining whether literal infringement has occurred is a two-step process.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).  Courts must first determine the scope and meaning of a patent by properly construing its claims.  *Id*.  Once a patent's claims are construed, the Court must determine whether the

ORDER
PAGE - 6

accused products infringe the asserted claims. *Id.* Construction of Claims 1, 10, and 18, followed by a comparison of the construed claims with the accused products, support finding that Defendants' accused products do not literally infringe '001 Patent Claims 1, 10, and 18. [1]

    i.    *Construction of Claims 1, 10, and 18 of the '001 Patent*

        The Court construes the term "remote" in Claims 1, 10, and 18 of the '001 Patent to require more than physical separation at the same location. The Court's construction is supported by the plain language of Claims 1, 10, and 18, the '001 Patent specification, and the prosecution history of the '001 Patent.

        The limitation language of Claims 1, 10, and 18 indicates the existence of two separate locations. Claim 1 requires "capturing and storing initial visual image signals representative of a particular movement at a first location." Dkt. #131, Ex. 3 at 10. A separate limitation in Claim 1 then requires a computer database "at a second location remote from said first location," where "preferred image signals representative of a particular movement" are stored. *Id.* The separation between the "first" and "second" locations (which is required by four of the six limitations of Claim 1) is underscored by the inclusion of the word "remote," which indicates that the first and second locations are not in the same room.

        Claim 10 similarly delineates between the capturing of visual image signals of a particular movement "at a first location," followed by the storage and comparison of the captured visual image signals "at a second location remote from said first location." *Id.* Claim 10 further requires a "means for regenerating further visual image signals of said particular movement," which are "adjusted in accordance with said selected preferred movement" to

---

[1] Because independent claims 1, 10, and 18 are not literally infringed, dependent claims 2-5, 11-15, and 19-20 are likewise not infringed. *See Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316 n.1 (Fed. Cir. 2006) (dependent claims not infringed where court found noninfringement of corresponding independent claims).

ORDER
PAGE - 7

allow an user to emulate the selected preferred movement "at said first location." *Id.* The separation between the "first" and "second" location is evidenced by the limitation in Claim 10 which indicates that a user can emulate the selected preferred movement "at said first location," while the captured visual image signals are compared at "said second location." This limitation indicates that the "first" and "second" location limitations refer to separate, distinct locations. Consequently, although Mr. Baker now argues that the "first" and "second" locations can be in the same room, the language evidenced by the limitations in Claim 10 indicates otherwise.

Claim 18, like Claims 1 and 10, also contains a limitation which requires that captured information be transmitted "to a remote location." Dkt. #131, Ex. 3 at 11. Like the meaning of "remote" in Claims 1 and 10, the Court construes the term "remote" in Claim 18 to require more than mere physical separation at the same location. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.").

Patent '001's specification further indicates that the term "remote" refers to more than the physical separation of an image capturing device and a computer at the same location. In its "Summary of the Invention" section, the '001 Patent indicates that the computer where visual images of preferred movements are stored "is most preferably located at a remote location so as to be accessible from a number of different locations." Dkt. #131, Ex. 3 at 6. Using "remote" in this section envisions more than just physical separation within the same room, as is evidenced by the distinction between the "remote location" and the "number of different locations" from which the computer database can be reached. The "Detailed Description of the Preferred Embodiments" similarly describes a separation between where a

ORDER
PAGE - 8

user's movements are captured, and where a computer is located.  *See id*. at 7-9.  For instance, this part of the specification indicates that "[w]here recording of movements takes place, bio-informational data, may also be transmitted or collected."  *Id*. at 7.  As an alternative to collecting bio-information data "[w]here recording of movements takes place," the '001 Patent specification indicates that bio-mechanical signals "may also be obtained by various scanning, editing and digital techniques, used within a remote computer data base . . . once the signal has been received by the remote data base . . . ."  *Id*.  The distinction between the location where movements are recorded and where bio-mechanical signals are received by the "remote computer data base," further demonstrates that the term "remote" requires more than physical separation at the same location.  That "remote" simply indicates physical separation between devices is further belied by the specification's description of the audio-visual signal transceiver required by the '001 Patent.  *Id*.

   The specification's use of the term "discrete" to describe the separation of units within the same room indicates that "remote" data bases cannot be within the same room as a user.  The specification describes the image capturing device as "a unit discrete from the audio-visual signal transceiver and adapted to be connected thereto."  *Id*.  Alternatively, the image capturing device and audio-visual transceiver "may be one and the same, so that the image capturing device also incorporates a unit for transmission and reception of signals to and from remote data bases."  *Id*.  That "remote" requires more than physical separation between devices is also supported by a section in the specification which explains that the computer required by the '001 Patent is programmed to accept signals "from remote locations, associated with the audio-visual transceiver."  That the locations associated with the audio-visual transceiver are

ORDER
PAGE - 9

"remote" implies those locations are separate and distinct from the "remote" locations where the computers are located.  *Id*. at 8.

Patent prosecution history also confirms Mr. Baker's desire to differentiate his claims from prior art, which allowed placing an image capturing device and a computer database in the same location, by adding two separate locations.  *See* Dkt. #131, Ex. 1 at 18 and Ex. 11 at 2-3, 29-31.  Patentees "may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution."  *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008).  When patentees "clearly characterize[e] the invention in a way to try to overcome rejections based on prior art," a disavowal of claim scope occurs.  *Id*.  Here, Mr. Baker disavowed the interpretation of "remote" he now seeks to use when he amended Claims 1 and 10 to include the "second location remote to the first location" language.  *See* Dkt. #131, Ex. 1 at 9-12.  To support this amendment, Mr. Baker argued that the "basic issue" distinguishing his patent from a prior art reference was "the separation or remoteness of the two basic components" of the '001 Patent.  *Id*. at 18.  Mr. Baker emphasized that while the images captured by the patent's image capturing device "are formed in one location for instruction such as a studio or an aircraft," the "[t]ransmittance to a separate location for analysis and feedback is critical . . . ."  *Id*.  This distinction between locales was deemed "critical," and Mr. Baker's arguments to support this distinction indicates that the term "remote" to distinguish between the two required locations requires more than just physical separation of the image capturing device and computer required by the '001 Patent.[2]

_____

[2] Rejection of Mr. Baker's CIP Patent also supports the finding that "remote" refers to more than physical separation at the same location.  The CIP Patent sought to expand the '001 Patent to allow a computer to be located at the same location, or adjacent to, the image capturing device called for in the '001 Patent. Dkt. #131, Ex. 6 at 5, 21 and Ex. 3 at 10-11.  The USPTO rejected the CIP Patent due to prior art references.

ORDER
PAGE - 10

Mr. Baker's reliance on a prior construction of the term "remote location" in an unrelated patent does not dissuade the Court from reaching its construction of the term "remote."   A term construed a certain way in one patent "need not have the same meaning when used in an entirely separate patent, particularly one involving different technology." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1318 (Fed. Cir. 2005).  This is because, "the manner in which the term is used in the patent may dictate a definition that differs from the definition that would be given to the same term in a different patent with a different specification or prosecution history."  *Id*.  Here, Mr. Baker cites *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294 (Fed. Cir. 2003), to argue that a "remote" location encompasses a setup where the computer required by the '001 Patent is located in the same room as the required image capturing device. Dkt. #133 at 23.

In *Brookhill*, the Federal Circuit considered a district court's construction of the term "remote location" as it was used in a patent that disclosed systems and methods for performing robotic surgery.  334 F.3d at 1296.  The patent at issue included limitations which required the transmission of video signals "to a remote location beyond a range of direct manual contact."  *Id*.  Given the surrounding text of the claims in question, the other claims, the written description, and the prosecution history, the Federal Circuit determined that "remote location" did not only mean "a location outside the operating room."  *Id*. at 1297, 1300-1302.  The Federal Circuit reasoned that a "remote location" could include a location within an operating room because the patent's written description and prosecution history "fail[ed] to express a manifest exclusion or restriction limiting the claim term . . . ."  *Id*. at 1301.

Here, the Court does not construe the term "remote" to include locations within the same room as the image capturing device required by the '001 Patent.  As previously

ORDER
PAGE - 11

explained, the context in which the term "remote" is used in the '001 Patent, the '001 Patent specification, and the prosecution history all indicate that this term should not be read as broadly as the term was read in *Brookhill*.

> ii.   *Claims 1, 10, and 18 of the '001 Patent Are Not Literally Infringed*

Literal infringement exists when each of a patent's claim limitations are found in the accused products. *Allen Eng'g Corp. v. Bartell Indus., Inc*., 299 F.3d 1336, 1345 (Fed. Cir. 2002). Patentees thus must prove that accused devices contain each limitation of the allegedly infringed claims. *E.g.*, *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id*. Consequently, upon finding the absence of one limitation courts need not address whether any other limitations are absent. *See Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320 ("Because we find that the accused OAM systems fail to meet the 'lateral' and 'side' limitations of claim 13, we need not consider additional noninfringement arguments made by OAM."). To determine if literal infringement of claims expressed in means-plus-function language is present, "the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (emphasis in original).

Defendants' accused products do not literally infringe Claim 1 of the '001 Patent. Here, the accused products, contrary to the limitations required by Claim 1, do not require the capturing of visual images "at a first location," followed by the subsequent storage of those images "at a second location remote from said first location." The Kinect Sensor and the USB camera are in the same room as the computer (in this case the accused game consoles and PCs)

ORDER
PAGE - 12

that stores, analyzes, and generates subsequent visual images.  The accused game consoles and PCs are thus not located "at a second location remote from said first location."  By design, the Kinect Sensor and USB camera are physically connected to the accused game consoles and PCs.  Defendants' accused products likewise do not literally infringe the claim limitation which requires "transmitting said captured and stored visual image signals from said first location to said computer at said second location."

Claim 10 of the '001 Patent is also not literally infringed.  Here, a Claim 10 limitation requires a "means for storing said captured visual image signals at a second location remote from said first location."  The claimed function in this limitation requires storing of captured visual image signals at a second location remote from the first location.  Here, Defendants' accused products are within the same room and the storage of signals "at a second location remote from said first location" does not occur.  Because identity of function between the accused products and this Claim 10 limitation is lacking, literal infringement cannot be found.

Independent Claim 18 is likewise not literally infringed.  Claim 18 requires a "means for transmitting said representative visual and informational data signals to a remote location." The '001 Patent's specification describes the corresponding structure to this recited means as an audio-visual transceiver that "may take the form of a portable signal unit or a personal computer."  Dkt. #131, Ex. 3 at 7.  The function claimed is the transmitting of the visual and informational data signals "to a remote location."  The identical function of this Claim 18 limitation is not found in the accused products because those products are all within the same room as a user, and they do not transmit signals to a "remote" location.  Because no identity of function exists between the accused products and this Claim 18 limitation, literal infringement cannot be found.

ORDER
PAGE - 13

In summary, because Defendants' accused products do not contain each limitation of Claims 1, 10, and 18, the Court does not find literal infringement of those claims.

**B. Infringement Under the Doctrine of Equivalents**

Prosecution history estoppel bars Mr. Baker from relying on the doctrine of equivalents to demonstrate infringement.  Under the doctrine of equivalents, a product or process that does not literally infringe a patent claim may nonetheless infringe if the elements of the accused product or process are equivalent to the claimed elements of a patent.  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  Plaintiffs alleging infringement must demonstrate that an accused product meets all of a patent claim's limitations.  *See id.* at 29 ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").  However, when a patentee narrows their claims to distinguish them from prior art, prosecution history estoppel may apply.  *Biagro v. W. Sales, Inc. v. Grow More Inc.*, 423 F.3d 1296, 1305 (Fed. Cir. 2005).  The narrowing of a claim in response to a patent application rejection thus estops a patentee from using the doctrine of equivalents to recapture matter surrendered between the original and amended claims.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003).

Here, Mr. Baker disclaimed the alleged equivalents during prosecution when the "second location remote from the first location" limitation language was added to Claims 1 and 10.  Before Mr. Baker amended his patent application, the USPTO cited the Mann Reference, and other prior art, to reject Mr. Baker's application.  Following this rejection, Mr. Baker's patent application was amended and the "second location remote from the first location"

language was added to limitations in Claims 1 and 10.  Because the "second location remote from the first location" language was added by Mr. Baker to overcome prior art rejections cited by the USPTO, Mr. Baker cannot now argue that the accused products' performance of the alleged claim steps in a single location is the equivalent of limitations amended to require two, separate locations.

Mr. Baker's arguments to support his amendments also demonstrate the applicability of prosecution history estoppel.  To support his patent amendments, Mr. Baker emphasized the need for two separate locations in the '001 Patent.  Dkt. #131, Ex.1 at 18-19.  This emphasis on two separate locations forecloses Mr. Baker's current attempt to demonstrate infringement under the doctrine of equivalents.

The Court is also not persuaded by Mr. Baker's attempt to rely on prosecution history estoppel's unforeseeability exception to apply the doctrine of equivalents.  Dkt. #133 at 23-24.  Plaintiffs can rebut the presumption that an amendment disclaims matter surrendered between original and amended claims if they can demonstrate that an equivalent was unforeseeable at the time of their patent application.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740-41 (2002)).  Here, Mr. Baker contends that he could not have foreseen the possibility that subsequent technologies would evolve to where a personal computer, as opposed to a remote computer, could possess the properties to execute his patent claims.  Dkt. #133 at 23-24.  The Court is not persuaded by this argument.  Prior art, specifically the Mann Patent, disclosed the steps of capturing, storing, comparing, and generating image signals of a preferred movement at a single location.  Dkt. #131, Ex. 5 at 4 and Ex. 11 at 2-3, 29-31.  Consequently, Mr. Baker is estopped from arguing that the accused products, which are all in the same room as a user, infringe under the doctrine of equivalents.

ORDER
PAGE - 15

### C.  "After-Arising" Technologies

Finally, Defendants contend that Mr. Baker's reliance on an "after-arising" theory to argue for applying the doctrine of equivalents is misplaced.  Dkt. #130 at 20-21.  The doctrine of equivalents allows patent owners to cover after-arising technologies that are not foreseeable as available technology when a patent application is filed.  *See Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 647 F.3d 1373, 1376 (Rader, J., concurring) ("In other words, '[t]he applicant is charged with surrender of foreseeable equivalents known before the amendment, not equivalents known after the amendment.'  Thus, the doctrine of equivalents allows patent owners to cover after-arising technology.") (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1380 (Fed. Cir. 2007)).  However, if a patent owner fails to claim an equivalent that is foreseeable as available technology, that subject matter enters the public domain.  *Id.*

According to Defendants, the claim limitations they rely on to support summary judgment do not specify the kind, nor the speed, of the computer required by the '001 Patent; instead, these claim limitations merely require a computer at a "second location remote from the first location."  Dkt. #130 at 20-21.  Because the prosecution history estoppel analysis requires a court to address the claim limitations allegedly infringed by an accused product's equivalent limitation, Defendants argue that the Court is limited to considering whether the equivalence asserted by Mr. Baker is an after-arising technology.  *Id.* at 21.  Mr. Baker disagrees, but merely lists several of Defendants' accused products which allegedly were not developed until after Mr. Baker filed his patent application; Mr. Baker argues these products work in conjunction to infringe on claim limitations found in the '001 Patent.  Dkt. #133 at 25-26.

ORDER
PAGE - 16

The Court agrees that Defendants' accused products are not after-arising technologies encompassed by the '001 Patent's "remote" location limitations of Claims 1, 10, and 18. Here, Mr. Baker argues that a computer in the same room as an image capturing device can be considered "remote." Dkt. #133 at 19-23. Because this claim limitation does not specify the type of computer used, or the speed of that computer's transmissions, the only relevant question in determining whether an "after-arising" theory allows application of the doctrine of equivalents is whether placing an image capturing device and a computer in the same room is an "after-arising" technology. Given prior art references which allowed for performing similar claims in the same location, the Court finds that the "after-arising" theory does not allow application of the doctrine of equivalents.

## V.  CONCLUSION

Having reviewed the Defendants' motion for summary judgment, Mr. Baker's response in opposition thereto, and Defendants' reply, along with all supporting declarations, exhibits, and the remainder of the record, the Court GRANTS Defendants' motion for summary judgment.

DATED this 3rd of January, 2017.


The Honorable Richard A. Jones
United States District Judge

ORDER
PAGE - 17